# Ex parte MIKE GAULT et al.

No. A-10439.    Feb. 10, 1944.

(146 P. 2d 133.)

Hulsey & Hulsey, of McAlester, for petitioners.

Randell S. Cobb, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for respondent.

JONES, P. J. The petitioners, Mike Gault and Allen Gault, instituted this original proceeding in habeas corpus in an effort to secure their release from confinement in the State Penitentiary.

Their petition alleges in substance that they were taken before the district court of Custer county on July 2, 1938, and entered their pleas of guilty to the crime of burglary and were sentenced to serve seven years imprisonment in the State Penitentiary. That at the same time the petitioner Mike Gault pleaded guilty to the charge of assault with a deadly weapon with intent to kill and received a term of ten years imprisonment, which was to run concurrently with the seven year sentence on the burglary charge. That immediately after they were sentenced in Custer county, and on the same day, the petitioners were transported to Beckham county and were jointly arraigned in the district court of Beckham county on a charge of robbery with firearms. That petitioners were required to

plead to said charge of robbery with firearms without the benefit of counsel, without being given time after arraignment in which to plead, and time for pronouncement of sentence after entering their pleas of guilty. That no preliminary examination was held in Beckham county on the robbery with firearms charge, but that said petitioners were required to enter their pleas of guilty and the petitioner Mike Gault was sentenced to serve 30 years in the State Penitentiary, and the petitioner Allen Gault was sentenced to serve 33 years in the State Penitentiary on said charge in Beckham county. That the petitioners have now served enough time in the State Penitentiary, when given credit for their good behavior, to entitle them to their release by reason of the sentence in Custer county on the burglary charge. That the judgment and sentence of the district court of Beckham county is void and petitioners are entitled to their discharge because of the matters hereinabove alleged.

A rule to show cause was issued and the warden of the State Penitentiary, in his response, attached copies of the commitments issued by the district courts of Custer county and Beckham county, together with certified copies of the judgments and sentences pronounced against petitioners in each of the cases in those respective counties as his justification for confinement of said petitioners.

The petitioners were brought before the court and each of them testified at length concerning the facts surrounding their arrest and pleas of guilty in the several cases filed against them. The proof showed that these two men had formerly been residents of Dewey county, Oklahoma. That prior to the commission by them of the various crimes in Custer county and Beckham county, herein involved, they had each been convicted and each served a term of imprisonment in the State Penitentiary at

Granite; the petitioner Mike Gault having served a term upon conviction in Kingfisher county for the crime of robbery; and the petitioner Allen Gault having served a term from Dewey county upon a charge of larceny of an automobile. The petitioner Allen Gault had also been tried once on a larceny charge which resulted in a hung jury.

The men each testified that they were charged with having committed a robbery in Beckham county on June 4, 1938. That Mike Gault was arrested on June 7, 1938, and Allen Gault on June 25, 1938. On June 21, 1938, Mike Gault was transported to the penitentiary at Granite for safekeeping, and on June 25, 1938, Allen Gault was taken to the Granite prison for safekeeping. That on July 1, 1938, they were brought back to Custer county and were taken to the county attorney's office. That the county attorney of Custer county and the county attorney of Beckham county were each present and discussed with them the alleged commission by them of the various crimes in those two counties. That the petitioners then and there made an agreement with the two county attorneys that they would plead guilty to all charges then filed against them if they would be allowed to get off with a total of 25 years. That it was with this understanding that they entered their pleas of guilty to the charges which were filed against them, but that instead of receiving a total sentence of 25 years they received a total sentence of 40 years imprisonment in the State Penitentiary.

The testimony of petitioners contradicted that part of their petition which alleged that they did not have a preliminary examination as they each admitted that they were taken before a justice of the peace in each county and waived a preliminary examination. They each further testified that at the direction of the court the county attorney read the information to them upon their arraign-

ment. They further testified that before being sentenced the county attorney made a statement to the court concerning the facts and that the court, in pronouncing sentence, followed the recommendation of the county attorney.

The petitioners' evidence then resolves their contentions on these points:

(1) They had no counsel and were not advised of their right to counsel.

(2) They were inexperienced in court procedure and did not know what they were doing.

As to their first proposition that they had no counsel and were not advised of their right to counsel, their evidence is contradicted by the affidavit of the district judge, T. R. Wise, who stated that he advised them fully of all their statutory and constitutional rights, but that said petitioners waived their right to counsel, their right to time in which to plead after arraignment and their right to time for pronouncement of sentence after the plea of guilty was entered, and they each expressed a desire to enter a plea of guilty and be sentenced instanter. The sentence that was assessed the petitioners was based upon the recommendation of the county attorney of Beckham county.

The case of Ex parte Meadows, 70 Okla. Cr. 304. 106 P. 2d 139, 146, relied upon by petitioners, is not analogous to the facts in the instant case. In the Meadows case the petitioner Meadows and his companion Wilkerson were both minors. Neither of them had ever before been confined in jail. Meadows and Wilkerson were admittedly illiterate and inexperienced in court proceedings. Under the record in the Meadows case it was clear that the district courts of Tillman and Comanche counties were too

hasty in committing those two inexperienced minors to the State Penitentiary. In forty-eight hours after their arrest in Tillman county they had been sentenced in both counties on the charges filed against them.

In the instant case the petitioners had been arrested several days before they entered their pleas of guilty. They were adults and each had formerly served a term of imprisonment in the State Penitentiary at Granite. Having been in trouble before and having had attorneys to advise with them and defend them before a jury, they certainly could not be classified as inexperienced in court proceedings. It is remarkable how much knowledge of court procedure an inmate of the State Penitentiary acquires in one year. The petitioners' testimony disclosed that they were hardened criminals and that they bargained for some time with the county attorneys of Custer and Beckham counties in trying to secure, as they testified, "the best deal possible." They both knew all about the charges which had been filed against them and do not contend that they were innocent of those charges. The robbery with firearms charge in Beckham county involved the taking of $9,300 in cash and securities.

In the case of Ex parte Meadows, supra, it is stated:

"Under Bill of Rights, sec. 20 [article 2], Okla. St. Ann. Const., an accused has the right to consult with counsel and to be fully advised as to his rights, and as to the consequences of his act before entering his plea to the indictment or information."

"A plea of guilty should be entirely voluntary, and should be made by one competent to know the consequences thereof, and should not be accepted until after the defendant has been fully advised by the court of his rights and the consequences of his plea."

"A person prosecuted for a crime may waive the rights guaranteed to him by Bill of Rights, relating to trial by jury, right to be heard by counsel, etc."

"Whether one accused of crime has waived his right to the assistance of counsel for his defense must depend in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

It is established in this jurisdiction that the writ of habeas corpus will not lie to correct purely procedural errors, and is not designed to interrupt the orderly administration of the laws by a competent court acting within the limits of its jurisdiction. Ex parte Grant, 32 Okla. Cr. 217, 240 P. 759; 12 R. C. L. 1192.

The constitutional provisions guaranteeing to every person in a criminal action certain rights are: First, those in which the public generally, and as a community, is interested, as well as the accused, and which are jurisdictional as affecting the power of the court to try the cause; second, those more in the nature of privileges which are for the benefit of the accused alone, and do not affect the general public. The former may not be waived, the latter may.

Among the legal safeguards which have been adopted for the benefit of the accused, which may be waived, are the following: The right to have 24 hours in which to plead after arraignment; the right to be furnished with a copy of the information; the right to 48 hours after conviction before sentence may be passed; the right to be confronted by the witnesses; the right to trial by jury; the right to have counsel to represent him; the right to a subpoena for his witnesses. Ex parte Gilbert, 71 Okla. Cr. 268, 111 P. 2d 205.

The only consideration for this court is whether, under the facts in the instant case, there was an intelligent waiver of these rights. We think this must be answered in the affirmative. After all of the evidence has been sifted, the only contention of the petitioners as to their being misled concerned the amount of punishment which was meted out to them. They contended that they thought that they would secure only 25 years in the State Penitentiary because of an agreement had with the county attorneys of the two counties involved, and that instead they received a total of 40 years imprisonment in the State Penitentiary. The records in the case and the other evidence contradict the petitioners upon this point. In addition to that, the petitioners themselves admitted that the district court, in pronouncing judgment, followed the recommendation of the county attorney. That when the county attorney made the recommendation of thirty years imprisonment for one petitioner, and 33 years imprisonment for the other petitioner, they voiced no objection.

Furthermore, the recommendation of the county attorney was purely advisory to the court and he was in no way bound to follow such recommendation. After hearing a statement of the facts surrounding the commission of the crime, it was the trial court's duty to assess such punishment upon the plea of guilty as seemed to him to be justified.

Under the facts and circumstances of this case, we do not feel that there has been such a denial of the rights of the petitioners that this court can say that the trial court lost jurisdiction during the course of the proceedings to pronounce judgment upon the plea of guilty.

The writ of habeas corpus is therefore denied.

BAREFOOT, J., concurs. DOYLE, J., not participating.