In the Matter of the Habeas Corpus of
James Richard ELLIS.

No. A–13323.

Court of Criminal Appeals of Oklahoma.
July 10, 1963.

George Hill, McAlester, Sam Sullivan, Durant, Jack Rose, Fort Smith, Ark., for petitioner.

Charles Nesbitt, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for respondent.

JOHNSON, Judge.

The petitioner, James Richard Ellis, entered a plea of guilty to the charge of murder in the district court of Stephens County, Oklahoma, and was sentenced to life imprisonment in the State Penitentiary. He now files this application for release by writ of habeas corpus, alleging that he is being restrained illegally.

The petitioner was arrested in Sequoyah County, Oklahoma in October, 1962. On the 11th day of October, 1962 Ernest Lovett, an agent of the Oklahoma Bureau of Investigation, came to the Sequoyah county

jail in Sallisaw. Here he received custody of James Richard Ellis and advised him that he was being held in connection with the death of Kelsie C. Beauchamp, a Duncan, Oklahoma attorney, who had been killed February 8, 1962 at Duncan.

Mr. Lovett states that he informed the petitioner of his rights and then proceeded with him to the Stephens County jail, at Duncan, arriving at approximately 3:10 p. m. on the same day. All parties agree that no one talked to James Richard Ellis that evening.

At approximately 9:00 a. m. the next morning, as stated by the transcripts and affidavits, James Richard Ellis was brought from the jail to the sheriff's office, where he was questioned by the county sheriff, Eldon Head, and Ernest Lovett of the State Bureau of Investigation. He was further advised of his rights and it was at this time that he was told of the evidence against him, and that he was to be charged with the murder of Kelsie C. Beauchamp.

Ellis then requested to see and talk with Dorothy Hobbs. She was in custody, being held in the county jail. Miss Hobbs was later to become Mrs. James Richard Ellis, the petitioner's wife.

After talking to Miss Hobbs, now Mrs. Ellis, the petitioner made a confession, which was recorded by the sheriff's secretary. He also prepared a confession in his own handwriting, some time during this interim and signed it in the presence of the sheriff. In this confession he stated, "I have made this statement of my free will with the understanding that Dorothy Hobbs Ellis is not to be charged in this case, and that the death penalty is not to be asked for me. Signed James R. Ellis Oct. 11, 1962. Witnesses: Eldon G. Head, Sheriff, Duncan, Okla."

After signing the confession the petitioner went with the sheriff, the crime bureau agent and the chief of police of Duncan, and Miss Hobbs to the scene of the crime, where he re-enacted the details of the crime. He and Miss Hobbs were then returned to the Stephens County jail for the night.

The following morning Miss Hobbs was taken by Sheriff Head and Agent Lovett to Amarillo, Texas, in order that she might persuade John Dale Radley, the other person charged with the murder of Kelsie Beauchamp, to waive extradition and return with them to Duncan. This was done and these parties then returned with John Dale Radley and Miss Hobbs to Duncan.

During the time that this was being done, the petitioner, James Richard Ellis, was taken by the county attorney before the county judge of Stephens County for arraignment. This was on October 12, 1962. According to the affidavit of the county attorney, the petitioner was advised of his rights and he requested 24 hours in which to enter his plea, and he was advised that he would be given until the following Monday, October 15, 1962. He was then returned to his cell at the county jail.

When John Dale Radley was returned to Stephens County he and the petitioner were allowed to consult with one another and Miss Hobbs was released from custody. This was all subsequent to the signing of the confession by the petitioner.

The next day, which was Saturday, October 13, 1962, the petitioner's father came to Duncan, and discussed his son's case with the county attorney, and was advised that his son had confessed and therefore did not need the services of an attorney. This was true, the county attorney said, since the petitioner was to get a life sentence, rather than face a jury and the possibility of the electric chair.

On Monday, October 15, 1962 the petitioner and John Dale Radley were brought before the county court for arraignment at approximately 1 P.M. They were apprised of their rights and both waived preliminary hearing and were bound over to the district court. At this point the county attorney prepared the necessary papers and filed them with the court clerk, and then arraigned these men before the district court. Here the information charging them was

read and they were informed of all of their rights, and waived them. The court then sentenced the petitioner to life in the penitentiary.

The appearance before the county court and the district court all took place within thirty minutes time, according to affidavits of the county attorney, Clinton D. Dennis, and the Oklahoma Bureau of Investigation, agent Ernest Lovett.

This Court is well aware of the fact·that certain rights may be waived by an accused. In re Dare, Okl.Cr., 370 P.2d 846; Ex parte Gault, 78 Okl.Cr. 172, 146 P.2d 133; Hutchinson v. State, Okl.Cr., 278 P.2d 858; Boyd v. State, Okl.Cr., 290 P.2d 160. But the means used to entice the accused into waiving these rights are the real facts that interest us. There are three propositions presented in the instant case, and we will endeavor to consider them as one, so that these facts can be seen in the clear light of day.

This petitioner did not have the benefit of counsel at any time during these proceedings. Nelson v. Burford, Warden, 92 Okl.Cr. 224, 222 P.2d 382; Ex parte McDaniel, Okl.Cr., 302 P.2d 496. He did waive this right when he appeared in the county court, some five days after he had been taken into custody. However, during these five days, he had been in jail and under interrogation; he had signed a confession and had once appeared before the county court for arraignment, and asked for time in which to plead. Also, during this time, the woman that he later married, before going to the penitentiary, was being held in custody.

With these facts in mind, the contention of the respondent that the petitioner was an educated, mature person, well acquainted with all of the ramifications of the legal processes of a criminal case and did not need counsel to represent him, cannot be sustained.

If this man had been afforded the services of an attorney, as he should have been, in the very outset, or when he was first incarcerated, then these questions of denial of due process could not have been raised.

■ No person can foretell how he would act when faced daily by interrogation, reminders of the death sentence and veiled threats that loved ones might be also charged as an accessory after the fact. To sign a confession, under these circumstances, would seem to be the logical way to bring an end to this harassment. And a confession made or induced by promise of reward or benefit, as was the situation in the instant case, would be deemed involuntary, and would not be admissible. Schrack v. State, 84 Okl.Cr. 260, 181 P.2d 270; Story v. State, 73 Okl.Cr. 273, 120 P.2d 387; In re Dare, Okl.Cr., 370 P.2d 846.

■ This Court has further said that "[t]o constitute coercion on the part of officers, there must exist facts indicative of conscious effort to produce fear or frustration, or hope by promises of reward." Sholes v. State, 97 Okl.Cr. 158, 260 P.2d 440.

Following this line of reasoning we might say that since the confession was never introduced into evidence, then it should have no bearing on this petitioner's plea of guilty. With this we cannot agree, for this coercion, or promise of reward, is a continuing thing that carries over from the initial confession, through the petitioner's plea of guilty. In other words, the petitioner's plea of guilty was obtained by this promise that is set forth in the petitioner's own hand writing, and witnessed by the sheriff of this County.

■ The Supreme Court of the United States has said that petitioner's constitutional rights were infringed, "[f]or a conviction on a plea of guilty coerced by a federal law enforcement officer is no more consistent with due process than a conviction supported by a coerced confession." Waley v. Johnston, 316 U.S. 101–105, 62 S.Ct. 964, 966, 86 L.Ed. 1302, citing Bram v. U. S., 168 U.S. 532, 18 S.Ct. 183, 42 L.

: Ed. 568; Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716.

■ This Court would urge that all trial courts follow the procedure set down many years ago by Judge Chappell in Dumas v. State, 54 Okl.Cr. 207, 16 P.2d 886, when he said:

"Trial courts of this state must learn that the Constitution means exactly what it says; that something more than haste is required in pronouncing judgment in cases of this character. The orderly proceeding of the court would require service of a copy of the information on defendant before he was arraigned, and, in capital cases, a list of the witnesses should be served upon him at least two days before the case is called for trial; that, when defendant is without counsel, the court should appoint counsel for him and adjourn the hearing for a sufficient time to permit counsel to consult his client and prepare for his plea and trial; that, when a plea of guilty is entered or a verdict of jury returned, the court should fix the statutory time for pronouncing sentence, thus preserving all the constitutional and statutory rights of defendant."

■ If these simple steps are followed, then there can be no question of abuse of due process, or deprivation of constitutional rights, and every person, whether large or small, can be assured of all of the rights given to him by our constitution.

It is therefore ordered that the judgment and sentence filed against the petitioner, James Richard Ellis, in case No. 23357 in the district court of Stephens County, and all the proceedings of said court in said cause subsequent to the filing of the information therein be and the same are hereby vacated and set aside.

It is further ordered that the writ of habeas corpus be issued and the warden of the State Penitentiary at McAlester is hereby ordered and directed to deliver the petitioner, James Richard Ellis, to the custody of the Sheriff of Stephens County, Oklahoma.

It is further ordered that the said Sheriff of Stephens County detain in custody the said James Richard Ellis pending the trial or other disposition of the charge filed against him in case No. 23357 in the district court of Stephens County, as provided by law in such cases.

NIX, J., concurs.

BUSSEY, P. J., dissents.