UNITED STATES of America,
Plaintiff–Appellee,

v.

Salvador MARTINEZ, Defendant–
Appellant.

No. 03–3003.

United States Court of Appeals,
Tenth Circuit.

May 14, 2004.

Gregory G. Hough, Office of the United States Attorney, Topeka, KS, for Plaintiff–Appellee.

Ronald E. Wurtz, Office of the Federal Public Defender, Topeka, KS, for Defendant–Appellant.

Before SEYMOUR, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and HARTZ, Circuit Judge.

## ORDER AND JUDGMENT*

McWILLIAMS, Senior Circuit Judge.

On May 30, 1999, two Kansas Highway Patrol Troopers stopped a 1992 Pontiac automobile traveling eastbound on Interstate 70 in Ellis County, Kansas, because, according to the troopers, the driver of that automobile had been traveling to the left of the center line and then over-correcting back across to the right shoulder of the highway. Barbara Ward was the driver of that car and she produced a valid Indiana driver's license. David Perry was a passenger in the car. During the ensuing conversation with the troopers, Perry told the troopers that his good friend, with the last name of Martinez, had paid for his and Ward's airline tickets to Denver in order to pick up the vehicle and drive it back to Indiana. A search of the vehicle disclosed 23 packages of methamphetamine weighing about 25 pounds concealed in the car. Based thereon, Ward and Perry on August 4, 1999, were charged with various drug offenses, to which Ward pled not guilty. However, Perry, pursuant to a plea agreement, pled guilty and thereafter "cooperated" with the authorities and "implicated" one Salvador Martinez as a "higher up" in the particular transaction wherein Ward and Perry were arrested in Kansas, and in a continuing conspiracy to bring methamphetamine from the West Coast to Indiana for sale.

Thereafter, in a superseding indictment filed on November 1, 2000, Martinez ("the defendant") and Ward were charged with

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

conspiring on May 30, 1999, to possess with an intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1). In a second count, Martinez and Ward were charged with possession on that same date with an intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). At his first appearance in court, the judge appointed the public defender's office to represent the defendant. Later, the public defender was permitted to withdraw upon the entry of appearance by retained counsel, who thereafter represented the defendant at trial. Trial of the case commenced on April 1, 2002. A jury found defendant guilty on both counts. On June 20, 2002, the judge who tried the case having since died, the case was reassigned for sentencing. On August 5, 2002, the defendant orally requested new counsel and his retained counsel was permitted to withdraw his appearance for the defendant. The public defender was again appointed to represent the defendant on appeal.

In this court, there is no challenge to the sufficiency of the evidence. Hence, the background facts need not be set forth in detail, and will only be referred to as is necessary to understand the issues which are raised on appeal. The new judge thereafter, on December 17, 2002, sentenced the defendant to life imprisonment on each count to be served concurrently. The defendant appeals. We affirm.

On appeal, the defendant challenges three rulings by the trial judge on evidentiary matters, each of which, according to counsel, requires a reversal, or, in the alternative, the cumulative effect thereof requires a reversal. Defendant also claims that the trial judge slept during a portion of the trial and that his case was prejudiced thereby. Additionally, defendant claims that the sentencing judge erred in two particulars when he sentenced him to life imprisonment on each count.

### TRIAL ERROR

On appeal, the defendant asserts that the district court, at trial, erred in three particulars, all relating to the admissibility of evidentiary matters. The first relates to the district court's admission of testimony from a police officer and another co-conspirator vouching for the credibility of the key government witness, Perry, a co-conspirator of the defendant. There was no contemporaneous objection thereto. The second relates to the district court's admission of hearsay testimony that the defendant during the course of the conspiracy had threatened and attempted to kidnap Perry's fiancé and her daughter. There was objection to this line of testimony, which objection was sustained. However, when counsel later inquired into the same matter, there was no contemporaneous objection by counsel. So, there was, in effect, no objection to this line of questioning. The third relates to the district court's admission of hearsay testimony to the effect that the vehicle which Perry and Ward were in when arrested in Kansas on May 30, 1999, was previously owned by the defendant and had been conveyed by him to a woman who was now deceased. There was no contemporaneous objection to that line of inquiry. Further, counsel suggests that even if none of these matters, viewed separately, was error, when viewed cumulatively, they constitute reversible error. We do not agree. None of these matters was objected to by trial counsel, and, when viewed in context, none constitute error, let alone plain error. Nor is the "cumulative error" doctrine applicable. As for the cumulative error argument, we said in *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir.1999), *cert. denied*, 530 U.S. 1208, 120 S.Ct. 2206, 147 L.Ed.2d 239 (2000), that the "[c]umulative-

error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors."

■ The final trial error argued in this appeal is a bit different. Apparently, when defense counsel was cross-examining Perry, the judge fell asleep on the bench. The prosecutor first noticed that the judge was apparently asleep and informed defense counsel of that fact, and the latter then promptly asked, and received, an *en camera* hearing on the matter. A hearing before the court and counsel thereafter ensued, outside the presence of the jury, and the defendant. The court and counsel all were apparently in agreement that nothing meriting a mistrial had occurred. In any event, without objection from defense counsel, or the prosecutor, the trial resumed. On appeal, defendant, represented now by the public defender, claims that the act of falling asleep "disparaged" the defendant's cross-examination of Perry in the eyes of the jury, and that the defendant was deprived of his right to be present at all stages of his trial when he was not personally present at the *en camera* hearing into the matter. We are not persuaded. In *U.S. v. Yanez Baldenegro*, Nos. 93–10538, 93–10542, 1994 WL 441757, at *3 (9th Cir. Aug. 15, 1994), the Ninth Circuit held that the fact that the trial judge fell asleep during defense counsel's closing argument did not dictate a reversal, stating that "[a] federal judge has broad discretion in supervising trials, and his or her behavior during trial justifies reversal only if it abuses that discretion." Further, the Confrontation Clause is subject to the harmless error rule. *U.S. v. Baca*, 494 F.2d 424, 428 (10th Cir.1974).

## SENTENCING ERROR

The presentence report, as well as the sentence imposed, were pursuant to the November 1, 2001, edition of the United States Sentencing Commission Guidelines Manual ("U.S.S.G."). The presentence report grouped Counts 1 and 2 in the indictment into a single count pursuant to U.S.S.G. § 3D1.2(d). The report then set defendant's base offense level at 38, stating that "[t]his case involved at least 76.79 kilograms of methamphetamine." U.S.S.G. § 2D1.1(c)(1). Thereafter, the report recommended that defendant's base offense level be increased by two levels under U.S.S.G. § 2D1.1(b)(1) and by four more levels under U.S.S.G. § 3B1.1(a), fixing defendant's adjusted offense level at 44. (At sentencing, the district court rejected a further recommendation that defendant's base offense level be increased by two more levels under U.S.S.G. § 2D1.1(b)(4).) Defendant's criminal history category was I, which, with his adjusted offense level of 44, called for a sentence of life imprisonment. Accordingly, the district court sentenced defendant to life imprisonment on each count to be served concurrently.[1]

■ U.S.S.G. § 2D1.1(b)(1) reads as follows:

If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.

In this regard, the presentence report reads as follows:

"On April 24, 2000, a stolen firearm was found in a vehicle registered to the defendant. The defendant admitted to law enforcement officers this weapon belonged to him. The probation officer believes the defendant's possession of this illegally obtained firearm is sufficiently related to his drug trafficking

---

1. If defendant's offense level had remained at 38, with his criminal history category of I, his guideline level would have been 235–293 months imprisonment.

activities. As a result, two levels have been added."

As indicated, defense counsel objected to the recommendation in the presentence report that the defendant's base offense level be increased by two levels under U.S.S.G. § 2D1.1(b)(1). The district court, at sentencing, overruled defendant's objection to this two level enhancement, concluding that the defendant did possess a firearm that he used in conducting a rather extensive and protracted drug activity. The firearm in question was found on April 24, 2002, in a vehicle owned by the defendant then being used by two of defendant's "henchmen." When questioned about the gun the defendant admitted it was his. At the time the gun was found by the police, on April 24, 2002, Perry had previously pled guilty and was "cooperating" with the police who were continuing their efforts to ascertain the extent of defendant's drug trafficking activities. In this regard, Perry had numerous telephone conversations with the defendant which were monitored by the police. The record suggests that when the gun was found in a vehicle owned by the defendant, the occupants of the vehicle were associates of the defendant who were monitoring a proposed meeting between the defendant and Perry. It is true that Perry, by that time, was no longer a party to the conspiracy, but defendant was charged not just with conspiring with Perry, but also conspiring with Ward, "and others," to possess and distribute methamphetamine. Also, as previously indicated, in connection with this conspiracy, there was some evidence that the defendant had threatened to harm Perry's fiance and her child. All things considered, the district court did not err in concluding that the defendant did, in fact, possess a firearm in connection with his general conspiracy with others to possess and distribute methamphetamine. *See* *U.S. v. Pompey,* 264 F.3d 1176 (10th Cir.

2001), *cert. denied,* 534 U.S. 1117, 122 S.Ct. 929, 151 L.Ed.2d 892(2002), and *U.S. v. Roederer,* 11 F.3d 973 (10th Cir.1993).

■ Counsel also objected to a recommendation in the presentence report that the defendant's offense level also be raised four levels under U.S.S.G. § 3B1.1(a). That guideline provides that, if the defendant was an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," his offense level should be increased by four levels. At sentencing, the district court overruled the defendant's objection and increased his offense level by four levels. In so doing, the defendant claims the district court erred. We do not agree.

In denying the defendant's objection, the district court recognized that it should consider "relevant conduct," in addition to the "crime of conviction" as indicated in the commentary to U.S.S.G. § 3B1.1. In this connection, the district court recognized that the defendant was "involved" not only with Perry, but also with Ward, Jim Kelhem and "other unnamed persons" in California and Indiana, and that the defendant "exercised a leadership role in planning and organizing the offense." In this connection, the record certainly shows that Martinez' criminal activity "was otherwise extensive." We review the district court's finding on this particular matter for clear error, after giving due deference to its application of the guidelines to the facts. *U.S. v. Owens,* 70 F.3d 1118, 1127 (10th Cir.1995). We find no clear error.

Judgment affirmed.